UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

**STAMPEDE PRESENTATION
PRODUCTS, INC.,**

                          **Plaintiff,**                         12-CV-491A(Sr)

v.

**PRODUCTIVE TRANSPORTATION, INC., et al.,**

                          **Defendant.**

---

### **REPORT, RECOMMENDATION AND ORDER**

This matter was referred to the undersigned by the Hon. Richard J. Arcara, in accordance with 28 U.S.C. § 636(b), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #5.

Plaintiff Stampede Presentation Products, Inc. ("Stampede"), brought this action in New York State Supreme Court, Erie County, against defendants Productive Transportation, Inc., Productive Transportation Carrier Corp. (collectively, "Productive"), and 1SaleADay L.L.C., seeking money damages based on an alleged loss of an interstate shipment of 960 flat screen TVs. The case was removed to this court pursuant to 28 U.S.C. §1441 by Notice of Removal filed on May 24, 2012 by defendant Productive (as consented to by defendant 1SaleADay), alleging original federal jurisdiction under 49 U.S.C. §14706 (liability of carriers under receipts and bills of lading). Dkt. #1.

Pending for report and recommendation is defendant 1SaleADay's motion to dismiss the complaint against it for failure to state a claim upon which relief can be

granted. Dkt. #13. Upon consideration of the pleadings and submissions presented, and for the reasons that follow, it is recommended that defendant's motion be granted.

## BACKGROUND

As alleged in the original Verified Complaint, filed in state court on May 2, 2012, Stampede is in the business of distributing presentation equipment, including flat panel display units and projectors, to audio/visual, computer, and home theater resellers. Dkt. #1, p. 8, ¶6. Pursuant to a "Purchase Invoice" dated February 10, 2012, Stampede purchased 960 thirty-two inch flat screen TVs from 1SaleADay, an Internet discount retailer, for a total price of $205,440.00. Stampede pre-paid the purchase price in cash by wire transfer on January 2, 2012. *Id.* at 21, ¶¶10-11.

Pursuant to a "Uniform Straight Bill of Lading" dated February 2, 2012, Stampede hired Productive for a fee of $3,475 to pick up the TVs at the manufacturer's warehouse in California, "FOB Origin," and deliver them to Stampede's customer, TigerDirect (also referred to as "SYX Distribution"), located in Napierville, Illinois. *Id.* at 22, ¶¶12-13. Productive in turn subcontracted with another carrier, MML Transport, Inc. ("MML") of Chicago, Illinois, to pick up the TVs in California and deliver them to Stampede's customer in Illinois. *Id.* at 8-9, ¶14. As alleged in the original Verified Complaint, "[t]he [TVs] were in fact picked up at the California warehouse, but they were never delivered to [Stampede]'s customer. Instead, they were stolen and/or lost by the trucker who picked them up at the warehouse." *Id.* at 9, ¶15. Stampede claims that Productive engaged MML as its agent to perform the obligations of the contract without authenticating MML's qualifications, resulting in the loss of the shipment and causing

Stampede to suffer damages in the amount paid to 1SaleADay, along with the profits it would have made in the resale of the TVs to its customer. *Id.* at 9-10, ¶¶18-29. Stampede asserts causes of action against Productive based on theories of breach of contract, negligence, fraudulent inducement, and tortious interference with contractual relations. *Id.* at 10-15, ¶¶31-78. Stampede also seeks recovery of the contract price and lost resale profits from 1SaleADay based on theories of breach of contract, negligence, unjust enrichment, and money had and received. *Id.* at 16-18, ¶¶80-103.

On June 19, 2012, defendant 1SaleADay filed a motion to dismiss the claims asserted against it, on the following grounds:

1. Stampede fails to state a claim against 1SaleADay for breach of contract because, under the Uniform Commercial Code ("UCC"), the Purchase Invoice governing the sale of the TVs was a "shipment" contract, not a "destination" contract, and the risk of loss passed from the seller to the buyer upon delivery of the goods to the carrier;

2. Stampede fails to state a negligence claim against 1SaleADay because there is no allegation of a legal duty independent of the duty imposed by the contract itself;

3. Stampede fails to state claims for unjust enrichment or money had and received because those quasi-contract doctrines do not apply where the parties' obligations are governed by a written contract for the sale of goods.

*See* Dkt. #13.

On July 9, 2012, following entry of a scheduling order for briefing on the motion to dismiss, Stampede filed an Amended Complaint containing new allegations in an effort to remedy the pleading defects addressed by 1SaleADay's motion. Specifically, with regard to the delivery of the TVs to the carrier at the manufacturer's warehouse, Stampede now alleges in the Amended Complaint that:

-3-

> 20. Possession of the Goods was in fact turned over at the California warehouse. However, the Goods were not turned over to MML. Instead, SaleADay turned them over to an unauthorized stranger, to whom defendant Productive had apparently provided a bill of lading.
>
> 21. The Goods were never delivered to plaintiff's customer. Instead, they were stolen by the unauthorized stranger to whom defendant SaleADay delivered them.

Dkt. #16, ¶¶20-21. With regard to the negligence claim against 1SaleADay, Stampede alleges in the Amended Complaint that 1SaleADay "had a duty to confirm that the person to whom [it] delivered the Goods was a carrier or person authorized by plaintiff to retrieve them. Defendant SaleADay failed to do so, and thus breached this duty." *Id.* at ¶96. The "unjust enrichment" and "money had and received" causes of action against 1SaleADay remain unchanged as alleged in the original state court Verified Complaint.

In response to the motion to dismiss, Stampede asserts that the Amended Complaint has clarified the claims against 1SaleADay by alleging that 1SaleADay breached the contract by delivering the TVs to someone other than the carrier authorized by plaintiff. *See* Dkt. #18, pp. 5-6. According to Stampede, 1SaleADay has mis-characterized the transaction at issue as a UCC "shipment contract/risk of loss" case, and the Amended Complaint sufficiently alleges that the breach occurred at the time the TVs were delivered by 1SaleADay to the "unauthorized stranger." Stampede also asserts that the Amended Complaint has clarified the negligence claim against 1SaleADay by specifying the independent legal duty breached by the delivery of the TVs to the "unauthorized stranger." *Id.* at 6-7.

## DISCUSSION AND ANALYSIS

**Motion to Dismiss**

When ruling on a motion to dismiss, the court must accept the material facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010); *Fontrick Door, Inc. v. Ferguson*, 2012 WL 268242, at *4 (W.D.N.Y. Jan. 10, 2012). However, legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness. *Starr v. Sony BMG Music Entertainment*, 592 F.3d 314, 321 (2d Cir. 2010), *cert. denied*, ___U.S.___, 131 S.Ct. 901 (2011). The court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985); *Pratt v. City of New York*, 2013 WL 979431, at *1 (S.D.N.Y. Mar. 14, 2013).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**Breach of Contract**

1SaleADay contends that Stampede has failed to state a breach of contract claim against it because the Purchase Invoice for the sale of the TVs is a "shipment contract"

governed by §2-504 of New York's Uniform Commercial Code, pursuant to which to the risk of loss of or damage to the goods passed from the seller to the buyer upon delivery of the goods to the carrier at the warehouse in California. UCC §2-504 provides:

> Where the seller is required or authorized to send the goods to the buyer and the contract does not require him to deliver them at a particular destination, then unless otherwise agreed he must
>
> (a) put the goods in the possession of such a carrier and make such a contract for their transportation as may be reasonable having regard to the nature of the goods and other circumstances of the case; and
>
> (b) obtain and promptly deliver or tender in due form any document necessary to enable the buyer to obtain possession of the goods or otherwise required by the agreement or by usage of trade; and
>
> (c) promptly notify the buyer of the shipment.
>
> Failure to notify the buyer under paragraph (c) or to make a proper contract under paragraph (a) is a ground for rejection only if material delay or loss ensues.

N.Y.U.C.C. §2-504. In contrast, a "destination contract" is covered by UCC §2-503; it arises where "the seller is required to deliver at a particular destination." N.Y.U.C.C. §2-503(3).

Allocation of the risk of loss is addressed by UCC §2-509(1), which provides:

> Where the contract requires or authorizes the seller to ship the goods by carrier
>
> (a) if it does not require [the seller] to deliver them at a particular destination, the risk of loss passes to the buyer when the goods are duly delivered to the carrier ….
>
> (b) if it does require him to deliver them at a particular destination and the goods are there duly tendered while in the possession of the carrier, the risk of loss passes to the buyer when the goods are there duly so tendered as to enable the buyer to take delivery.

N.Y.U.C.C. §2-509(1).

Based on this Court's reading of the documents governing Stampede's purchase of the TVs from 1SaleADay in this case, and considering the undisputed logistics of the transaction, it is clear that the contractual arrangement required or authorized 1SaleADay to ship the TVs by carrier, designated by Stampede to be Productive Transportation. The Purchase Invoice (submitted as Exhibit A to both the original and amended complaints) contains no express requirement that 1SaleADay deliver the TVs "at a particular destination." The invoice simply identifies 1SaleADay as the "Vendor," and directs that the purchased items are to be shipped to Stampede's resale customer, TigerDirect, in Napierville, Illinois. Dkt. #1, p. 21; Dkt. #16, p. 17. The Uniform Straight Bill of Lading, prepared on a "Productive Transportation" form designating Productive as the "delivering carrier," clearly indicates that the TVs were to be shipped "FOB Origin" by the "Shipper," identified as Stampede, from their origin at the warehouse in California to TigerDirect in Illinois. Dkt. #1, p. 22; Dkt. #16, p. 19.

As recognized by the Second Circuit, "[w]here the terms of an agreement are ambiguous, there is a strong presumption under the U.C.C. favoring shipment contracts. Unless the parties 'expressly specify' that the contract requires the seller to deliver to a particular destination, the contract is generally construed as one for shipment." *Windows, Inc. v. Jordan Panel Systems Corp.*, 177 F.3d 114, 117 (2d Cir. 1999) (citing 3A Ronald A. Anderson *Uniform Commercial Code* §§2-503:24, 2-503:26; also citing *Dana Debs, Inc. v. Lady Rose Stores, Inc.*, 319 N.Y.S.2d 111, 112 (N.Y.City Civ.Ct. 1970) ("The word 'require' means that there is an explicit written understanding to that effect for otherwise every shipment would be deemed a destination contract."). Here, the terms of the agreement clearly express the parties' understanding that the buyer

(Stampede) designated a carrier (Progressive) to make the shipment of the TVs from the manufacturer's warehouse to the customer. There is no express language anywhere in the contract documents specifying that the seller (1SaleADay) was itself required to deliver the TVs to a particular destination. Even if these terms of agreement were to be somehow construed as ambiguous, "the strong presumption favoring shipment contracts" would lead the Court to conclude that UCC §2-509(1)(a) should apply to allocate the risk of loss to Stampede upon 1SaleADay's delivery of the TVs to the carrier at the warehouse in California. *Windows,Inc.*, 177 F.3d at 117; *Dana Debs*, 319 N.Y.S.2d at 112.

This conclusion is strengthened by the clearly printed indication on the Bill of Lading that the goods were to be shipped by Stampede, and delivered by Productive, "FOB Origin" from the warehouse in California to the resale customer in Illinois. "The general rule is that upon a sale 'f.o.b. the point of shipment,' title passes from the seller at the moment of delivery to the carrier, and the subject of the sale is thereafter at the buyer's risk." *Sara Corp. v. Sainty Intern. America Inc.*, 2008 WL 2944862, at *7 (S.D.N.Y. Aug. 1, 2008) (quoting *Standard Casing Co. v. California Casing Co.*, 233 N.Y. 413, 416 (1922)). Under the ordinary application of this rule, "delivery to the carrier is delivery to the buyer." *Chase Manhattan Bank v. Nissho Pacific Corp.*, 254 N.Y.S.2d 571, 577 (App. Div. 1964), *aff'd*, 16 N.Y.2d 999 (1965); *see also* UCC §2-319(1)(a) ("Unless otherwise agreed the term F.O.B. (which means 'free on board') at a named place … is a delivery term under which … when the term is F.O.B. the place of shipment, the seller must at that place ship the goods in the manner provided in this Article (Section 2-504) and bear the expense and risk of putting them into the possession of the carrier").

Stampede contends that 1SaleADay's reliance on the UCC provisions dealing with allocation of risk of loss is a "pure red herring" (Dkt. #18, p. 16), since the facts pleaded in the Amended Complaint clearly set forth a plausible claim that 1SaleADay breached the contractual arrangement by delivering the TVs to an unauthorized carrier. To the contrary, since the parties are merchants as that term is defined in UCC §2–104(1), and the transaction at issue is for the sale of goods as defined in UCC §2–105(1), it cannot be disputed that the allocation of the risk of loss to the goods during the transaction is covered by UCC Article 2.  *See, e.g., Suzy Phillips Originals, Inc. v. Coville, Inc.*, 939 F. Supp. 1012, 1017 (E.D.N.Y. 1996) ("In New York, [UCC] Article 2 governs disputes concerning the sale of goods between merchants."), *aff'd*, 125 F.3d 845 (2d Cir. 1997); *Kabbalah Jeans, Inc. v. CN USA Intern. Corp.*, 907 N.Y.S.2d (Table), 2010 WL 1136511, at *2 (N.Y.Sup.Ct. 2010) (transactions between merchants for sale of goods covered by UCC Article 2).

Applying the UCC's allocation of risk of loss provisions, because the contract documents clearly identify Stampede as the party to the transaction responsible for hiring an authorized carrier to ship the goods from the point of origin to its customer in Illinois, and because there is otherwise no express indication that 1SaleADay itself was required to deliver the goods at a particular destination, the contract governing the transaction at issue must be construed as a shipment contract under UCC §2-504(a), and the risk of loss passed to Stampede when the goods were delivered to the carrier, under UCC §2-509(1)(a).  As indicated by the signatures on page one[1] of the Bill of

---

[1] It is noted that this signature page was not included with the Bill of Lading attached as Exhibit B to both the original and amended complaints.

Lading, the TVs were picked up by the carrier on February 2, 2012 (*see* Item 13-2, pp. 2-4), and there is nothing in the pleadings or in the contract documents attached as exhibits thereto to indicate that the goods were non-conforming or were otherwise not duly delivered within the requirements of UCC Article 2.

Accordingly, since 1SaleADay had already fulfilled its contractual obligations, and Stampede had assumed the risk, at the time the goods were lost, there can be no set of facts pleaded that would allow the Court to draw the reasonable inference that 1SaleADay is liable for breach of contract.

Based on this analysis, accepting the material facts alleged in the complaint as true and drawing all reasonable inferences in the plaintiff's favor, this Court finds that Stampede has failed to plead sufficient factual content to state a breach of contract claim against 1SaleADay that is plausible on its face. It is therefore recommended that Stampede's breach of contract claim against 1SaleADay be dismissed.

**Negligence**

It is a well established principle of New York law that "a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Clark–Fitzpatrick, Inc. v. Long Island R.R.*, 70 N.Y.2d 382, 389 (1987), *quoted in LaSalle Bank Nat. Assoc. v. Citicorp Real Estate Inc.*, 2003 WL 1461483, at *3 (S.D.N.Y. Mar. 21, 2003). Further, a negligence claim cannot be sustained against a contracting party if it "do[es] no more than assert violations of a duty which is identical to and indivisible from the contract obligations which have allegedly been breached." *Metro. W. Asset Mgmt., LLC v. Magnus Funding, Ltd.*, 2004 WL 1444868, at *9

(S.D.N.Y. June 25, 2004) (quoting *Luxonomy Car, Inc. v. Citibank, N.A.*, 408 N.Y.S.2d 951, 954 (App. Div. 1978)).

Stampede alleges in the Amended Complaint that 1SaleADay breached its duty to confirm that the trucker to whom it delivered the goods was actually the carrier authorized by Stampede. Stampede contends that this duty arises from the degree of care that a reasonably prudent person would use upon tender of $220,000 worth of electronic equipment to a trucker for shipment from California to Illinois–a duty entirely independent of the contractual obligations in the Purchase Invoice.

However, as discussed above, it is undisputed that Stampede was the party to the transaction charged with arranging for an authorized carrier to pick up the goods at the manufacturer's warehouse and transport them to the customer. It is also undisputed that 1SaleADay delivered conforming goods to the carrier, and that the loss of goods sued upon occurred after that delivery. As discussed above, since 1SaleADay had already fulfilled its obligations under the shipment contract at the time the goods were lost, and Stampede had assumed the risk of loss, there can be no set of facts pleaded that would allow the Court to draw the reasonable inference that 1SaleADay breached a duty that arose "from circumstances extraneous to, and not constituting elements of," the obligations of the contract itself. *Clark-Fitzpatrick*, 70 N.Y.2d at 389. "Merely charging a breach of a 'duty of due care,' employing language familiar to tort law, does not, without more, transform a simple breach of contract into a tort claim." *Id.* at 390.

Accordingly, the Court finds that plaintiff has failed to allege facts sufficient to support a facially plausible negligence claim against defendant 1SaleADay.

**Unjust Enrichment/Money Had and Received**

Likewise, Stampede has failed to state a claim upon which relief can be granted against 1SaleADay based upon quasi-contractual theories of unjust enrichment or money had and received. *See Goldman v. Metropolitan Life Ins. Co.*, 5 N.Y.3d 561, 587 (2005) ("The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates in the absence of any agreement."); *Hoyle v. Dimond*, 612 F. Supp. 2d 225, 231 (W.D.N.Y. 2009) (cause of action for money had and received sounds in quasi-contract; citing *Rocks & Jeans, Inc. v. Lakeview Auto Sales & Serv., Inc.*, 584 N.Y.S.2d 169, 170 (App. Div. 1992). As explained by the New York Court of Appeals:

> The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter. A "quasi contract" only applies in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation imposed in order to prevent a party's unjust enrichment.

*Clark-Fitzpatrick*, 70 N.Y.2d at 388 (citations omitted).

As discussed above, it is not disputed that the subject matter of the transaction at issue in this case, and the essential terms and conditions of the relationship between the parties, was defined by a valid and enforceable written contract, precluding recovery in quasi-contract for events arising out of the transaction. Accordingly, the Court finds that plaintiff has failed to plead facts sufficient to sustain a facially plausible claim for relief against 1SaleADay based upon quasi-contractual theories of unjust enrichment or money had and received.

## **CONCLUSION**

For the foregoing reasons, it is recommended that defendant 1SaleADay's motion to dismiss (Dkt. #13) be GRANTED.

Therefore, it is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). <u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order</u>. *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." <u>Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections

<u>to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.</u>

DATED:   Buffalo, New York
         April 30, 2013

                                          *s/ H. Kenneth Schroeder, Jr.*
                                          H. KENNETH SCHROEDER, JR.
                                          United States Magistrate Judge